[No. 39112.    Department Two.    September 12, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. LAWRENCE FORBES, *Appellant.**

*Schroeter, Jackson, Talbot & Smith,* by .*Chas. H. W. Talbot,* for appellant.

*Paul A. Klasen, Jr.,* for respondent.

NEILL, J.—This is an appeal from a judgment and sentence following defendant's conviction by a jury on five counts of forgery in the first degree.

In January, 1966, a jacket containing 10 personalized check blanks belonging to Everett Michel disappeared from a Moses Lake tavern. In that same month a wallet containing identification belonging to Jackson Haney disappeared. Later, some of the Michel checks were presented at various

*Reported in 445 P.2d 204.

business places in Grant County. The checks were payable to Jackson C. Haney, purportedly issued by Michel, and bore the endorsement of Haney. The checks were not honored by the drawee bank. It was established that two ex-felons, Edwards and Hammons, had posed as Haney and passed the checks. After their arrest, Edwards and Hammons admitted that they had passed the checks, but claimed that defendant had written the checks or had given them the checks already made out. Defendant admitted to having drawn the checks, but claimed that he had been coerced by Edwards and Hammons. Defendant was sentenced to the penitentiary. Edwards and Hammons were given probation.

Defendant first contends that his appointed trial counsel was inadequate and failed to afford him proper representation.[1]

■ Our holding in *State v. Piche*, 71 Wn.2d 583, 590, 430 P.2d 522 (1967), is appropriate with respect to this assignment of error:

> To assure the defendant of counsel's best efforts then, the law must afford the attorney a wide latitude and flexibility in his choice of trial psychology and tactics. If counsel is to be stultified at trial by a post trial scrutiny of the myriad choices he must make in the course of a trial: whether to examine on a fact, whether and how much to cross-examine, whether to put some witnesses on the stand and leave others off—indeed, in some instances, whether to interview some witnesses before trial or leave them alone—he will lose the very freedom of action so essential to a skillful representation of the accused.
>
> . . . .
>
> Where the court appoints a licensed and practicing member of the bar to appear for and represent an indigent defendant in a criminal case, a strong presumption of competence arises from (1) the fact of his appointment by the judge of a trial court, (2) from the fact that counsel is a member of the bar of the highest court of the state, and (3) from the fact that the attorney is regularly

---

[1]Trial counsel withdrew and defendant is here represented by retained counsel.

and actively engaged in the practice of law. These three factors create a presumption that may be overcome only by a clear showing of incompetence derived from the whole record.

If, therefore, appointed counsel is a regularly practicing member of the bar of the highest court of the state, he is presumed qualified and a judgment will not be reversed on the grounds of incompetence of counsel unless such incompetence appears affirmatively on review so clearly as to show that the accused was thereby deprived of a constitutionally fair trial.

Defendant seems to be contending that his appointed counsel's representation of him was incompetent from start to finish and points to certain portions of the trial proceedings as examples of this incompetence. From a careful review of the record, we are convinced that defendant was competently represented. The examples of alleged incompetence set forth in defendant's brief do not establish that he was denied a constitutionally fair trial. The most that can be said of the claim is that defendant's current counsel would have tried the case in a different manner. Trial techniques, strategy, and tactics are very much a matter of professional judgment and we cannot apply "20/20 hindsight" in testing for professional incompetence.

As his next assignment of error, defendant contends that the prosecutor's conduct denied defendant the opportunity of having a fair trial. Defendant contends that the prosecutor asked some leading questions and allegedly attempted to prejudice the jury by repeated references to the financial losses suffered by the stores that accepted the forged checks. It appears that in questioning the employees of the stores which accepted the forged checks, the prosecutor inquired as to whether these checks had been honored by the bank. In answer to these questions, some of the witnesses testified that they had suffered a financial loss as a result of accepting the checks. Defendant contends that the financial loss of the victim is not an element of the crime of first degree forgery, and that the prosecutor's questions were therefore improper and constitute reversible error.

■ Assuming, arguendo, that the prosecutor's conduct was at least in part improper, we do not believe that his conduct constitutes reversible error. Defendant did not raise objections at trial concerning the alleged misconduct. Moreover, we do not believe that the alleged misconduct affected the final results of the trial. It is well established that a jury verdict in a criminal case will be set aside and a new trial granted to defendant only when an error occurring during the trial is prejudicial (*i.e.*, when the error affects or presumptively affects the final results of the trial). Where competent evidence establishes defendant's guilt, the conviction will not be set aside because of insubstantial errors. *State v. Beard, ante* p. 335, 444 P.2d 651 (1968); *State v. Franks, ante* p. 413, 445 P.2d 200 (1968); *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968).

Defendant next contends that the trial judge should have taken an active role to assure that he had adequate representation. He argues that it must have been obvious to the trial judge that appointed counsel was ill-prepared and apathetic while the prosecutor was taking advantage of every latitude extended to him by defendant's lawyer and, therefore, that the trial judge had an affirmative duty to intervene on behalf of defendant. Because of our disposition of defendant's assignment of error concerning the competency of his appointed counsel, nothing further needs to be said here other than that the trial judge was entirely correct in remaining impartial and not acting as advocate for defendant.

■ As his next assignment of error, defendant contends that his being sentenced to the penitentiary while the other two convicted persons were allowed probation denied defendant equal protection of the laws and was an abuse of the trial judge's discretion. Defendant argues that upon all the relevant standards for sentencing, the other guilty persons were no more deserving of probation than defendant.

It is now well established in this state that

The granting of a deferred sentence and probation, following a plea or verdict of guilty, is a rehabilitative

measure, and as such is not a "matter of right but is a matter of grace, privilege, or clemency granted to the deserving and withheld from the undeserving," within the sound discretion of the trial judge. (Citations omitted.) *State v. Shannon,* 60 Wn.2d 883, 888, 376 P.2d 646 (1962).

*See also, State ex rel. Woodhouse v. Dore,* 69 Wn.2d 64, 416 P.2d 670 (1966); *State v. Giraud,* 68 Wn.2d 176, 412 P.2d 104 (1966); *State v. Williams,* 51 Wn.2d 182, 316 P.2d 913 (1957); *State ex rel. Schock v. Barnett,* 42 Wn.2d 929, 259 P.2d 404 (1953); *State v. Farmer,* 39 Wn.2d 675, 237 P.2d 734 (1951).

From our review of the record, we are not willing to say that the trial judge abused his discretion in sentencing defendant to the penitentiary rather than granting him probation. We will not substitute our judgment for that of the trial judge.

Finally, defendant assigns error to the trial court's refusal to grant a motion to dismiss at the close of the state's case. He contends the state failed to prove that the signature exemplars used by the FBI handwriting expert in examining the forged checks were the same as the handwriting samples given by defendant to the police.

The state introduced the forged checks and then introduced the handwriting specimens taken from defendant by a police officer. It next produced the handwriting expert who testified that these exhibits were the same ones that he had previously examined. The expert, using enlargements of these exhibits, explained to the jury the basis for his conclusion that defendant had written the face of the forged checks. There was no hiatus in this proof. Defendant thereafter took the stand, admitted that he forged the checks, and contended that he did so under threat of bodily harm by Hammons.

Finding no reversible error, we affirm the judgment.

FINLEY, C. J., HILL and HUNTER, JJ., and BRADFORD, J. Pro Tem., concur.

November 12, 1968. Petition for rehearing denied.