[No. 19235-7-II.    Division Two.    October 17, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD ANTHONY McCORKLE, *Appellant*.

*Patricia A. Pethick*, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, and *Mary G. Carver, Legal Intern*, for respondent.

HUNT, J. — Edward Anthony McCorkle appeals his

sentence for robbery in the first degree. We remand to allow the State to prove the classifications of McCorkle's nonstipulated out-of-state prior convictions.

## FACTS

In December 1994, McCorkle pleaded guilty to robbery in the first degree. His statement on plea of guilty read:

(a)   The standard sentencing range is based on the crime I am pleading guilty to and my criminal history. Criminal history includes prior convictions, whether in this state, in federal court, or elsewhere. Criminal history also includes juvenile court convictions as follows: convictions for sex offenses, any class A juvenile felony only if I was 15 or older at the time the juvenile offense was committed, any class B and C juvenile felony convictions only if I was 15 or older at the time the juvenile offense was committed and I was less than 23 years old when I committed the crime to which I am now pleading guilty.

(b)   The prosecuting attorney's statement of my criminal history for sentencing is as follows:

See attached [handwritten in original document]

Disputed by defense counsel [handwritten in original document]

Unless I attach a different statement, I agree that the prosecuting attorney's statement is correct and complete. If I have attached my own statement, I assert that it is correct and complete. If I am convicted of any additional crimes between now and the time I am sentenced I am obligated to tell the sentencing judge about those convictions.

McCorkle did not attach his own statement of criminal history.

McCorkle disputed the prosecutor's statement of his criminal history affixed to his statement on plea of guilty, which listed thirteen felony convictions: three Washington convictions, five Oregon convictions, one Ohio conviction,

one Georgia conviction, and three North Carolina convictions. The criminal history section of the presentence investigation (PSI) listed 12 prior convictions, omitting the Ohio conviction listed on the prosecutor's statement of criminal history.

At sentencing, McCorkle stipulated that he had six prior felony convictions: theft (1987), forgery (1987), and possession of controlled substances (1989) from Oregon; forgery (1989) from Clark County; and burglary (1986) and attempted burglary (1991) from Pierce County.[1] McCorkle asserted that his offender score was six.

The State argued that McCorkle's offender score was 10 because, in addition to the six stipulated felonies, McCorkle had seven out-of-state convictions. To prove these additional seven, the State offered an FBI rap sheet that listed a total of thirteen prior convictions: the six felonies stipulated by McCorkle, *plus* an Oregon theft II conviction, an Ohio unauthorized use of a motor vehicle conviction, a Georgia burglary conviction, an Oregon larceny convic-

---

[1]Certified copies of the judgments and sentences for these six convictions were presented to the sentencing court. But certified copies of the judgments and sentences for the three Oregon convictions were somehow misplaced and neither filed with the superior court clerk's office nor marked as exhibits.

To rectify this error, a Court of Appeals commissioner granted McCorkle's motion to supplement the record and ordered the State to submit to Pierce County Superior Court certified copies of the following: three Oregon convictions, theft, forgery, and possession of a controlled substance; two Pierce County convictions, attempted burglary and burglary; and one Clark County conviction, forgery.

In response to the Commissioner's order, the State submitted the documents contained in Clerk's Papers at 31-94. They include copies of the judgments and sentences for *four* Oregon convictions instead of three: theft I (#87-06-32953), theft II (#87-06-33348), forgery I (#87-05-32362), and possession of a controlled substance (#87-12-36984). These supplemental documents include certified copies of the judgments and sentences for the six stipulated felonies, and also the charging documents and the defendant's statements on plea of guilty for each of four Oregon convictions; three of which had been included in the six stipulated convictions. McCorkle has stipulated to one Oregon theft, but the Supplemental Clerk's Papers included two Oregon thefts.

It is not clear from the record whether the sentencing court considered anything other than the judgments and sentences for the Oregon felonies. It is also unclear to which of the two Oregon theft convictions McCorkle stipulated. To date, McCorkle has not objected to the content of the supplemental clerk's papers.

tion, two North Carolina escape convictions, and a North Carolina breaking and entering (nonfelony) conviction. The FBI rap sheet neither identified the out-of-state statutes nor revealed the underlying facts for any of the convictions.

As additional proof, the State offered a 1989 judgment and sentence from Clark County (Clark County Judgment). The criminal history section of this document listed five of the seven disputed convictions as "[p]rior convictions constituting criminal history for purposes of calculating offender score": an Ohio UUMV conviction, a Georgia burglary conviction, an Oregon theft I conviction, and North Carolina escape and burglary II convictions.

The Clark County Judgment differed from the FBI rap sheet in the following ways: The Clark County Judgment abbreviated the Ohio conviction as "UUMV," while the FBI rap sheet spelled out the same conviction as "Unauth[orized] Use of a Motor Veh[icle.]" The Clark County Judgment listed the Oregon conviction as "Theft 1," while the FBI rap sheet identified the same conviction as "Larc[eny.]" The Clark County Judgment listed a North Carolina conviction as "Burglary 2," while the FBI rap sheet identified the same conviction as "B & E Non Fel [Breaking and Entering (nonfelony)]." The Clark County Judgment omitted one North Carolina escape conviction and an Oregon conviction for theft II.

At sentencing, McCorkle argued that the additional seven out-of-state convictions should not be included in his offender score because the State had failed to produce certified copies of the judgments. McCorkle objected to the use of the FBI rap sheet and the Clark County Judgment to prove the additional convictions, contending that both documents were unreliable. To support his objection, McCorkle pointed out the above-mentioned discrepancies; but he did not specifically object to the FBI rap sheet and Clark County Judgment as insufficient to prove the *classifications* of the out-of-state convictions. Instead, McCorkle made a general objection that the seven out-of-

state convictions should not be included in his offender score, stating only, "basically we dispute all the others [convictions]."

Based on the six stipulated felonies, the FBI rap sheet, and the Clark County Judgment, the sentencing court concluded that McCorkle had a total of thirteen prior felony convictions. The court noted that the Clark County Judgment, reflecting a total of nine prior felony convictions, was endorsed by the defense attorney who represented McCorkle at that prior sentencing. The sentencing court calculated McCorkle's offender score as 10, resulting in a standard range of 129 to 171 months, and sentenced McCorkle to 171 months in prison.[2]

McCorkle appeals inclusion of the seven-out-of state convictions in his offender score, arguing that the Clark County Judgment and the FBI rap sheet were insufficient to prove that these convictions would be classified as felonies under Washington law. McCorkle also appeals the lower court's acceptance of his guilty plea, contending that he did not have the requisite intent to support a plea of guilty to first degree robbery. McCorkle argues that the court should allow him to withdraw his guilty plea because: (1) he believed he was pleading guilty to robbery in the second degree, and (2) the State breached the plea agreement by arguing at sentencing that McCorkle's offender score was 10, rather than 6, as contemplated by McCorkle when he entered his guilty plea.

## ANALYSIS

The Sentencing Reform Act of 1981 established "a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences . . . ." RCW 9.94A.010. RCW 9.94A.360 sets forth which prior convictions can be used in calculating offender scores for sentencing purposes: Class A felony

---

[2]If the court had determined that McCorkle's offender score was six, the standard range would have been 77 to 102 months. RCW 9.94A.310.

and felony sex convictions are always included. Non-sex class B felony convictions are included unless, since his last release from confinement, the offender has spent 10 consecutive years in the community without another conviction. Class C felony and serious traffic convictions are included unless, since his release, the offender has spent five consecutive years without another conviction. Otherwise, misdemeanors are not included. Former RCW 9.94A.360(2) (altered by Laws of 1997, ch. 338, § 5).[3]

## A. Criminal History

■ To establish a defendant's criminal history for sentencing purposes, the State must prove the existence of prior convictions by a preponderance of the evidence. *State v. Ammons*, 105 Wn.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986). RCW 9.94A.370(2) provides that:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgment includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a *preponderance of the evidence.*

(Emphasis added.)

---

[3]Former RCW 9.94A.360(2):

Except as provided in subsection (4) of this section, class A and sex prior felony convictions shall always be included in the offender score. Class B prior felony convictions other than sex offenses shall not be included in the offender score, if since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent ten consecutive years in the community without committing any crime that subsequently results in a conviction. Class C prior felony convictions other than sex offenses shall not be included in the offender score if, since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without committing any crime that subsequently results in a conviction.

The best evidence of a prior conviction is a certified copy of a judgment. *State v. Descoteaux*, 94 Wn.2d 31, 36, 614 P.2d 179 (1980), *overruled on other grounds by State v Danforth*, 97 Wn.2d 255, 643 P.2d 882 (1982). But the State may introduce other documents of record in a prior proceeding to establish the defendant's criminal history. *State v. Herzog*, 48 Wn. App. 831, 834, 740 P.2d 380 (1987). The court may also consider an FBI rap sheet, in conjunction with other evidence, for purposes of determining a defendant's offender score. *State v. Reinhart*, 77 Wn. App. 454, 891 P.2d 735, *review denied*, 127 Wn.2d 1014 (1995).

Calculation of an offender score is reviewed de novo. *State v. McCraw*, 127 Wn.2d 281, 289, 898 P.2d 838 (1995); *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994).

## 1. Out-of-State Convictions

RCW 9.94A.360(3) provides that "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law."[4] Division One of this court has held that "[a]n out-of-state conviction may not be used to increase the defendant's offender score unless the State proves it is a felony in Washington." *State v. Cabrera*, 73 Wn. App. 165, 168, 868 P.2d 179, 181 (1994) (citing *State v. Weiand*, 66 Wn. App. 29, 831 P.2d 749 (1992)).

### a. *Challenge by Defendant*

"In cases where the defense does not challenge the criminal history as presented by the State, the use of prior Washington judgments and sentences satisfies the State's

---

[4]In *Cabrera*, the State presented three prior Washington judgments and sentences to prove that the defendant had two prior out-of-state felony convictions. The defense objected to the use of the Washington judgments to prove the classification of the out-of-state convictions.

burden."[5] *Cabrera*, 73 Wn. App. at 168. But "once the defendant challenges the use of these documents . . . the State is required to present additional evidence of the *classification* of the out-of-state convictions in order to carry its burden of proving the convictions by a preponderance of the evidence." *Cabrera*, 73 Wn. App. at 169 (citing RCW 9.94A.360(3)) (emphasis added); *Weiand*, 66 Wn. App. at 31-34; *see also State v. Mitchell*, 81 Wn. App. 387, 914 P.2d 771 (1996).

In *Roche*, "the record [was] devoid of the underlying facts upon which Roche's California robbery conviction was based"; it was therefore impossible to determine how the California robbery would be classified in Washington. *Roche*, 75 Wn. App. at 514. Division One held that an out-of-state conviction had to be removed from calculation of the defendant's criminal history, unless the State could establish on remand that it would constitute a class A felony under Washington law. The court rejected Roche's contention that classification of his out-of-state conviction could be determined as a matter of law. Consistent with *Roche*, this court held that when a defendant challenges the validity of a prior conviction, the trial court must hold an evidentiary hearing. *Reinhart*, 77 Wn. App. at 457 (citing RCW 9.94A370(2)); *see also State v. Drummer*, 54 Wn. App. 751, 757, 775 P.2d 981 (1989).[6]

█ Here we conduct a two-pronged inquiry: (1) whether the evidence was sufficient to identify the out-of-state statute underlying each conviction; and (2) whether the evidence was sufficient to identify a potentially comparable Washington felony.

---

[5]The State does not need to introduce copies of prior convictions or otherwise prove them by a preponderance of the evidence if the defendant stipulates to them. *State v. Thomas*, 57 Wn. App. 403, 409, 788 P.2d 24 (1990), *overruled on other grounds by State v Parker*, 132 Wn.2d 182, 937 P.2d 575 (1997); *see also State v. Vahey*, 49 Wn. App. 767, 746 P.2d 327 (1987).

[6]Discusses the potential for error when the defendant challenges the *accuracy* of the information contained on the FBI rap sheet as to specific convictions and the trial court relies on the rap sheet alone in absence of a full evidentiary hearing.

b. *Classification as Felony*

In *Weiand,* this court formulated a test for determining the classification of out-of-state crimes by comparing the elements of the out-of-state statute with potentially comparable Washington offenses. *Weiand,* 66 Wn. App. at 31-34. First, the court determines whether a comparable Washington offense exists. The key inquiry is under what Washington statute could the defendant have been convicted if he or she had committed the same acts in Washington. *Weiand,* 66 Wn. App. at 33; *see also State v. Duke,* 77 Wn. App. 532, 534, 892 P.2d 120 (1995).

If an out-of-state conviction was entered after 1975, the relevant Washington law is that existing at the time of the prior offense. *Weiand,* 66 Wn. App. at 32. In contrast, if a conviction occurred before 1975, it is compared with offenses under current Washington law. *State v. Breedlove,* 79 Wn. App. 101, 115-17, 900 P.2d 586 (1995).

2. McCorkle's Unstipulated Priors

We apply the two-pronged test to each of McCorkle's seven prior out-of-state convictions, to determine whether the record is sufficient to identify the out-of-state statute and also whether the identified offense could be classified as a felony in the State of Washington.

a. *1987 Oregon Theft II Conviction*

There is sufficient evidence to identify the out-of-state offense as OR. REV. STAT. § 164.045 (1996), "theft in the second degree." But the facts are insufficient to classify this offense as a felony in Washington. The supplemental Clerk's Papers include McCorkle's statement on plea of guilty as follows: "I plead 'GUILTY' on the basis of the fact that in Multnomah County, Oregon, (write in facts and dates) I participated in a theft at Nordstroms on June 6, 1987 of merchandise *valued at less than $200.00.*" (Emphasis added.) Theft less than $200 is comparable to

Washington's theft in the third degree, a gross misdemeanor. RCW 9A.56.050. Not comparable to a felony in Washington, the 1987 Oregon theft II conviction cannot be used in calculating McCorkle's offender score.

### b. *1980 Ohio Unauthorized Use of a Motor Vehicle Conviction; 1982 Parole*

There is sufficient evidence to identify the out-of-state statute as OHIO REV. CODE ANN. § 2913.03 (Banks-Baldwin 1997), "Unauthorized Use of a Motor Vehicle." A potentially comparable Washington offense is "taking a motor vehicle without permission," a class C felony. But Washington's statute differs slightly from the Ohio statute: Washington's statute requires that the defendant "*intentionally* take or drive away any automobile or motor vehicle." RCW 9A.56.070 (emphasis added). Ohio's statute requires that "no person shall *knowingly* use or operate . . . [a] motor vehicle." OHIO REV. CODE ANN. § 2913.03 (Banks-Baldwin 1997) (emphasis added). The underlying facts of this conviction have not been included in the record. Therefore, we cannot determine whether the Ohio conviction would be classified as a felony in Washington.

### c. *1976 Georgia Burglary Conviction*

There is sufficient evidence to identify the out-of-state statute as GA. CODE ANN. § 16-7-1 (1997), "Burglary." Georgia's burglary statute is broad in scope, encompassing three potentially comparable Washington felonies: burglary in the second degree (RCW 9A.52.030), residential burglary (9A.52.025), and vehicle prowl in the first degree (RCW 9A.52.095). Because the record is insufficient to determine the underlying facts, we cannot determine whether the Georgia burglary would be classified as a class B or a class C felony in Washington.

### d. *1975 Oregon Larceny Conviction*

The Clark County Judgment identifies this offense as

"Theft 1"; the FBI rap sheet identifies this conviction as "Larc[eny.]" The record is inadequate to determine the Oregon statute.

Even assuming that this conviction was for "Theft 1," the evidence is insufficient to determine the comparable offense in Washington. In Oregon in 1975, a person committed felony Theft I if the threshold value of the stolen merchandise was more than $200. OR. REV. STAT. § 164.055 (1975). In contrast, a theft is not a felony in Washington unless the value of the stolen merchandise is over $250. RCW 9A.56.040. Here the record does not include the value of the stolen item. We cannot determine whether the Oregon theft would be classified as a felony in Washington.

### e. *1971 and 1969 North Carolina Escape Convictions*

The evidence is insufficient to determine the North Carolina escape statute under which McCorkle was convicted. North Carolina has at least three statutes with the word "escape" in the title: N.C. GEN. STAT. § 148-45 (1996); N.C. GEN. STAT. § 14-255 (1996); N.C. GEN. STAT. § 14-256 (1996). McCorkle contends that the various degrees of escape in North Carolina cannot be compared to Washington escape statutes. The State does not address these two escape convictions in its Respondent's Brief. Moreover, one of these convictions is omitted from the Clark County Judgment. Nor does the record contain evidence for the underlying facts for these convictions. It is therefore impossible to ascertain the comparable Washington offenses.

### f. *1969 North Carolina Breaking and Entering (nonfelony) Conviction*

McCorkle argues for the first time on appeal that this offense is a misdemeanor, which the Clark County Judgment mischaracterized as a felony. The State does not address the sufficiency of proof regarding this conviction.

This conviction is most likely comparable to Washington's criminal trespass in the first degree, a gross misdemeanor. N.C. Gen. Stat. § 14-54 (1996); RCW 9A.52.070. The record does not demonstrate that this offense would be a felony in Washington.

3. Resentencing

a. *Existing Record*

The evidence on the existing record is sufficient to prove at least seven of McCorkle's prior felony convictions: the six stipulated convictions and the Georgia burglary conviction. But the existing record is insufficient to determine whether McCorkle's six other out-of-state prior convictions are comparable to felonies in Washington. Without such evidence the sentencing court may have miscalculated McCorkle's offender score.

Classification of the 1980 Ohio conviction/1982 parole for unauthorized use of a motor vehicle is especially critical. Unless on remand the State can establish at least a class C felony classification for this Ohio offense, the 1976 Georgia burglary conviction cannot be included in McCorkle's offender score if release from confinement for that burglary predates McCorkle's next conviction (1986 Washington burglary) by more than five years, if the Georgia burglary is comparable to a class C Washington felony; or 10 years, if comparable to a class B Washington felony. RCW 9.94A.360(2). The same would hold true for the 1975 Oregon larceny and 1969 and 1971 North Carolina escape convictions.

b. *Remand*

The State's failure to prove that six of McCorkle's prior out-of-state convictions are comparable to Washington felonies contributed to the trial court's miscalculation of McCorkle's offender score. McCorkle also contributed to this miscalculation by failing to object specifically to use of the FBI rap sheet and the Clark County Judgment as

proof of *classification* of these prior out-of-state convictions. Instead, McCorkle made a blanket objection that the FBI rap sheet and Clark County Judgment were unreliable and therefore insufficient to prove his out-of-state convictions. The appropriate remedy is remand for an evidentiary hearing to allow the State to prove the classification of the disputed convictions.

RCW 9.94A.100 provides:

> The prosecuting attorney and the defendant shall each provide the court with their understanding of what the defendant's criminal history is prior to a plea of guilty pursuant to a plea agreement. All disputed issues as to criminal history shall be decided at the sentencing hearing.

If McCorkle disputed the State's version of his criminal history, he had an affirmative obligation to provide his own statement of his criminal history before entering his guilty plea. Yet he failed to provide such statement and, instead, objected only that the prior convictions to which he did not stipulate were generally unreliable. He made no specific objection that he had not been convicted of the prior offenses or that they were not comparable to felonies in Washington. Rather he raises these issues for the first time on appeal.[7]

The State argues that having established only 9 prior felonies, rather than 13, is harmless error, since the standard range for an offender score of 9 is the same as the standard range for an offender score of 13. We disagree that the error is harmless. The Washington Supreme Court recently held: "When the sentencing court incorrectly calculates the standard range . . . remand is the remedy unless the record clearly indicates the sentencing court would have imposed the same sentence anyway." *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). Here the record does not clearly indicate that the sentenc-

---

[7]If McCorkle had been more specific in his objections at the time of sentencing, we would hold the State to the existing record and simply remand for resentencing without consideration of those prior convictions for which the proof was insufficient.

ing court would have imposed the same sentence without the prior unclassified prior convictions and the resultant change in offender score.

Where a defendant specifically and timely objects that the evidence does not prove classification of prior out-of-state convictions used to calculate an offender score, the sentencing court should conduct an evidentiary hearing to allow the State to adduce additional evidence of classification. If the State then fails to prove the requisite felony classifications, the State will not have another opportunity to prove the classifications on remand following appeal.

But, as here, where a defendant makes only a general objection below, neither the State nor the trial court is put on notice of the defendant's claimed defects. We entertain McCorkle's refinement on appeal of his general objections below because challenges to an offender score calculation may be raised for the first time on appeal. *Roche*, 75 Wn. App. at 513. If McCorkle's sentence was based upon prior convictions which do not meet statutory criteria, the sentencing court acted without statutory authority to impose a sentence based upon the resultant miscalculated offender score. RCW 9.94A.370(2) and RCW 9.94A.360(2). Accordingly, the *Roche* remand procedure is appropriate in cases such as this one, where the defendant has made only a general blanket objection at sentencing and specifically raises for the first time on appeal, insufficient classification of prior convictions. *Roche*, 75 Wn. App. at 514.

### B. Guilty Plea

In his pro se supplemental brief, McCorkle contends that the court erred in accepting his guilty plea because he lacked the requisite intent for robbery in the first degree. McCorkle also contends that he is entitled to withdraw his plea because he believed he was pleading guilty to robbery in the second degree and because the State did not recommend an offender score of six as represented in the statement on plea of guilty.

### 1. Requisite Intent

RCW 9A.56.200 defines robbery in the first degree as follows:

> (1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:
>
> (a) Is armed with a deadly weapon; or
>
> (b) Displays what appears to be a firearm or other deadly weapon; or
>
> (c) Inflicts bodily injury.
>
> (2) Robbery in the first degree is a class A felony.

McCorkle contends that he inflicted bodily injury on his victim without "conscious thought," and therefore, he did not have the requisite intent to support a plea to robbery in the first degree. In his statement on plea of guilty, Mc-Corkle wrote: "This is my statement: In Pierce County, Wa., on 11/1/94, I stole a purse from the person of Cheryl Lyons by striking her and inflicting bodily injury." His statement on plea of guilty also contains a list of rights he waived.

The intent required to prove robbery in the first degree is intent to deprive the victim of the property. *State v. Byers*, 136 Wash. 620, 622, 241 P. 9, 10 (1925); *State v. Carter*, 4 Wn. App. 103, 109, 480 P.2d 794, 797 (1971). Intent to cause bodily injury is not an element of robbery in the first degree. Thus McCorkle's contention that he lacked such intent has no relevance to the validity of his guilty plea.

### 2. Withdrawal of Plea

Withdrawal of a guilty plea may be necessary to correct a manifest injustice where a defendant establishes that: (1) he was denied effective assistance of counsel; (2) the plea was not ratified by the defendant or one authorized by him to do so; (3) the plea was involun-

tary; or (4) the prosecution did not keep the plea agreement. *State v. Taylor*, 83 Wn.2d 594, 597, 521 P.2d 699 (1974); *State v. Ashley*, 16 Wn. App. 413, 416, 558 P.2d 302 (1976). There is strong presumption of voluntariness when a defendant completes the plea form and admits to reading, understanding, and signing it. *State v Smith,* 87 Wn. App. 293, 296, 941 P.2d 704, 706 (1997) (citing *State v Perez*, 33 Wn. App. 258, 261-62, 654 P.2d 708 (1982)). A sentence inconsistent with a prosecutor's plea bargain recommendation is not grounds for withdrawal of a guilty plea because a plea bargain does not bind the court. *In re Personal Restraint of Hughes*, 19 Wn. App. 155, 158, 575 P.2d 250 (1978); *State v. Cherry*, 15 Wn. App. 547, 549, 550 P.2d 543 (1976).

McCorkle contends that the State breached the plea agreement by arguing that McCorkle's offender score was 10. The only record on appeal regarding McCorkle's guilty plea is his Statement on Plea of Guilty (Statement). The Statement reflects the State's intention to calculate McCorkle's offender score based on McCorkle's criminal history, which included 13 named prior convictions. The record is devoid of any evidence that the State agreed to recommend a sentence based on an offender score of six. Accordingly, McCorkle has failed to establish that the State breached the plea agreement.

McCorkle's contention that he mistakenly believed he was pleading to robbery in the second degree is also not a basis for withdrawal of his plea. McCorkle endorsed the content of the Statement when he signed it. There is no evidence to suggest that McCorkle's plea of robbery in the first degree was involuntary.

## C. Conclusion

We remand for an evidentiary hearing to allow the State to prove by a preponderance of the evidence that McCorkle's nonstipulated, out-of-state convictions are comparable to felonies in the State of Washington.

The trial court shall then resentence McCorkle. For resentencing purposes, McCorkle's criminal history shall comprise the six convictions to which McCorkle stipulated and any other convictions for which the State meets its burden of proof, and the criteria established by RCW 9.94A.360(2).

SEINFELD and ARMSTRONG, JJ., concur.

Review granted at 134 Wn.2d 1019 (1998).